Bernard v Citibank, N.A. (2021 NY Slip Op 03822)





Bernard v Citibank, N.A.


2021 NY Slip Op 03822


Decided on June 16, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 16, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
ROBERT J. MILLER
FRANCESCA E. CONNOLLY, JJ.


2018-08728
 (Index No. 513884/17)

[*1]Jude Bernard, appellant, 
v
Citibank, N.A., et al., respondents, et al., defendants.


Richard Gresio, Great Neck, NY, for appellant.
Butler Fitzgerald Fiveson & McCarthy, P.C., New York, NY (David K. Fiveson, Julie A. Levine, and Akerman, LLP [Sherry Xia and Jordan M. Smith], of counsel), for respondent Citibank, N.A.
Lydecker Diaz, Melville, New York (Robert J. Pariser and Louis Brett Goldman of counsel), for respondent Sutton Alliance, LLC.



DECISION & ORDER
In an action, in effect, pursuant to RPAPL article 15 to quiet title to real property and for declaratory relief, the plaintiff appeals from an order of the Supreme Court, Kings County (Karen B. Rothenberg, J.), dated May 17, 2018. The order granted the separate motions of the defendant Citibank, N.A., and the defendant Sutton Alliance, LLC, pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against each of them.
ORDERED that the order is affirmed, with one bill of costs, and the matter is remitted to the Supreme Court, Kings County, for the entry of a judgment, inter alia, declaring that the plaintiff is equitably estopped from denying the validity of the subject mortgage.
The plaintiff commenced this action against, among others, Citibank, N.A. (hereinafter Citibank), and Sutton Alliance, LLC (hereinafter Sutton; hereinafter together the defendants). The complaint alleged that the plaintiff was "the fee owner" of certain real property located at 182 Washington Avenue in Brooklyn (hereinafter the subject property).
The complaint alleged that on June 22, 2007, Citibank "offered to lend and [the plaintiff] offered to accept a loan secured by a mortgage on the [subject] property for $1,000,000." On that same date, Citibank "presented certain loan documents on the property for [the plaintiff] to sign to secure a certain loan." The complaint alleged that on that date, Sutton "was an agent of [Citibank]," and that "the closing was attended by . . . a . . . notary public provided for and supplied by [Citibank] and Sutton." The complaint further alleged that a mortgage purportedly securing the loan was not recorded until January 2, 2008, that "the recorded mortgage fails to bear [the plaintiff's] signature," and that "without a valid signature . . . the mortgage is defective and unenforceable."
As relevant here, the complaint asserted four causes of action against the defendants. All four causes of action were based on the allegation that the mortgage that was recorded on January 2, 2008 (hereinafter the recorded mortgage), was defective because it did not include the plaintiff's [*2]signature.
The first cause of action sought to quiet title to the subject property. The first cause of action alleged that because the recorded mortgage was defective, Citibank had "no interest in the [subject] property." The second cause of action sought to recover damages for negligent misrepresentation. The third cause of action sought to recover damages for "fraud and conspiracy to commit fraud." The second and third causes of action independently alleged that, as a result of the defendants' actions, the plaintiff "has been unable to sell, market, renovate, or refinance the [subject] property and [was] induced to improperly pay [Citibank] on the invalid mortgage and . . . Sutton . . . [on the] costs for title insurance, searches, and pick up fees as well as recording and other fees." The fourth cause of action sought a "declaratory judgment to clear the mortgage off of the [subject] property."
The "wherefore" clause of the complaint requested vacatur of the recorded mortgage. The plaintiff also requested "a judgment in the amount equal to all closing costs paid to Defendants with any payments to [Citibank] since June 22, 2007." Notably, the complaint did not seek to rescind the loan agreement, and the plaintiff did not allege that he failed to receive the proceeds of the $1,000,000 loan identified in the complaint.
Citibank subsequently moved pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against it. In support of its motion Citibank submitted, among other things, a copy of the June 22, 2007, loan agreement (hereinafter the loan agreement).
The loan agreement granted the plaintiff an "equity source" line of credit up to the amount of $1,000,000. The plaintiff "promise[d] to pay to Citibank . . . all Loan Advances" in accordance with the loan agreement. The loan agreement identified the subject property by its street address, and stated that "[a]s security for the [loan] Agreement, you are giving Citibank a security interest in the [subject] Property . . . which . . . secures all of your obligations under this [loan] Agreement and the Mortgage." The loan agreement stated that "the Mortgage" would be "sign[ed]" by the plaintiff "along with th[e] [loan] Agreement." In addition to other remedies, the loan agreement provided that "Citibank shall have . . . the right to bring an action against you and the right to bring a foreclosure action against the [subject] Property." The loan agreement included a signature purporting to be the plaintiff's on a line above the plaintiff's pre-printed name and to the left of the pre-printed date of "06/22/2007."
In support of its motion pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against it, Citibank argued that the plaintiff had ratified the loan agreement and should be precluded from denying the validity of the recorded mortgage. Citibank contended that the plaintiff's own banking statements demonstrated that he had accepted and retained loan advances in the total sum of $996,648.85, which were deposited into his account pursuant to the loan agreement on June 27, 2007. Citibank asserted that since the plaintiff had retained the benefits of the loan agreement, even after he had gained knowledge of the alleged defect in the recorded mortgage, he should be precluded from contesting the validity of the recorded mortgage.
Citibank also contended that the action was barred by the doctrine of res judicata. In this regard, Citibank noted that it had commenced an action to foreclose the mortgage in 2009 (hereinafter the 2009 action), after the plaintiff allegedly defaulted under the terms of the loan agreement. Citibank noted that the plaintiff had made the same allegations of a forgery in the 2009 action, and the issue had been decided against him in an order granting Citibank's motion for summary judgment on the complaint in the 2009 action.
Citibank asserted that the 2009 action was discontinued by a stipulation of the parties, pursuant to which the plaintiff had agreed to make payments to "cure[] his default and reinstate[] his loan." Citibank alleged that the plaintiff had continued to make sporadic payments towards his loan, most recently making a payment of $14,866.47 in October 2017.
Sutton separately moved pursuant to CPLR 3211(a) to dismiss the complaint insofar [*3]as asserted against it. Sutton contended that the first and fourth causes of action must be dismissed insofar as asserted against it because it did not assert any ownership interest in the subject property. Sutton contended, among other things, that the second and third causes of action failed to state a cause of action and were barred by the doctrine of res judicata.
The plaintiff opposed Citibank's motion to dismiss, contending, among other things, that his own "receipt of the proceeds is irrelevant" to this action. The plaintiff similarly opposed Sutton's separate motion to dismiss, contending, as relevant here, that Sutton "makes arguments in equity that Plaintiff['s] receipt of the proceeds of the mortgage somehow absolves Defendants of their liability [for] fraud and ratifies the mortgage." The plaintiff continued: "A vacated mortgage does not reflexively preclude payment on the Note or in equity and a mortgagor's receipt of the proceeds is irrelevant on the within issue."
In an order dated May 17, 2018, the Supreme Court granted the separate motions of Citibank and Sutton pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against each of them. The court concluded that dismissal was warranted "on the grounds of res judicata, collateral estoppel and ratification." The plaintiff appeals. We affirm, albeit on slightly different grounds (see e.g. Matter of Westchester Joint Water Works v Assessor of the City of Rye, 27 NY3d 566, 572; Scozzafava v State of New York, 174 AD3d 1109, 1110).
"When a court rules on a CPLR 3211 motion to dismiss, it must accept as true the facts as alleged in the complaint and submissions in opposition to the motion, accord plaintiffs the benefit of every possible favorable inference and determine only whether the facts as alleged fit within any cognizable legal theory" (Whitebox Concentrated Convertible Arbitrage Partners, L.P. v Superior Well Servs., Inc., 20 NY3d 59, 63 [internal quotation marks omitted]; see Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 414). "Under CPLR 3211(a)(1), a dismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law" (Leon v Martinez, 84 NY2d 83, 88; see Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326). "One example of such proof is an unambiguous contract that indisputably undermines the asserted causes of action" (Whitebox Concentrated Convertible Arbitrage Partners, L.P. v Superior Well Servs., Inc., 20 NY3d at 63, citing Greenfield v Philles Records, 98 NY2d 562, 569-570).
Here, in support of its motion pursuant to CPLR 3211(a), Citibank submitted, among other things, a copy of the loan agreement. The loan agreement, consistent with the factual allegations in the complaint, may be described as a "credit line mortgage."
"Succinctly explained, a credit line mortgage contemplates multiple advances, payments upon those advances and further readvances which may, from time to time, reduce the loan balance to zero while the credit line and the efficacy of the mortgage remain outstanding" (1 Bergman on New York Mortgage Foreclosures § 2.25; see Real Property Law § 281). The role of the mortgage in this context, like others, is to provide "collateral security for the payment of [the] obligation" (1 Bergman on New York Mortgage Foreclosures § 1.20).
In general "[a] mortgage is a lien on real property given as security for the payment of a debt" (id.). "The typical mortgage transaction is accomplished by the mortgagor executing to the mortgagee a mortgage note (or bond) and a mortgage" (id.). Generally "[b]oth the note and mortgage are acknowledged before a notary public" (id.), and "[t]he acknowledgment raises a presumption of due execution" (id.). Significantly, however, "[a]s between the parties themselves, a conveyance of real estate is effective even if the instrument is improperly acknowledged or unacknowledged" (id.; see Son Fong Lum v Antonelli, 102 AD2d 258, 262, affd 64 NY2d 1158; see also Strough v Wilder, 119 NY 530, 535).
Here, the plaintiff does not deny that he executed the loan agreement, which explicitly required him to sign a mortgage as security for the loan. Nor does the plaintiff contend that he did not receive the benefits of the loan agreement, to wit, access to a $1,000,000 line of credit. The plaintiff does not claim that the loan was unsecured, or that he was somehow unaware that the [*4]subject property was pledged as collateral for the repayment of the sums advanced under the terms of the loan agreement (cf. Crispino v Greenpoint Mtge. Corp., 304 AD2d 608, 609; Cippitelli Bros. Towing & Collision v Rosenfeld, 171 AD2d 637, 638). Technically, the plaintiff does not even deny that he executed a copy of the mortgage in accordance with the loan agreement, he merely contends that the copy that was recorded on January 2, 2008, did not bear his signature. The plaintiff contends that this defect rendered the recorded mortgage void ab initio and therefore unenforceable (see generally First Natl. Bank of Nev. v Williams, 74 AD3d 740, 741-742).
"Acquiescence as a defense has, speaking generally, a dual nature" (Pollitz v Wabash R.R. Co., 207 NY 113, 129). "It may, upon the one hand, rest upon the principle of ratification, and may be denominated implied ratification, or it may, upon the other hand, rest upon the principle of estoppel, and may be denominated equitable estoppel" (id. at 129).
Estoppel, in this context, does not turn upon "the validity of the mortgage but upon the fact that the mortgagor would, if allowed to urge the defense, obtain an unconscientious advantage" (Hammelburger v Foursome Inn Corp., 54 NY2d 580, 587 [citation and internal quotation marks omitted]; see Duryea v Mackey, 151 NY 204, 208; Weyh v Boylan, 85 NY 394, 398; see also 1 Bergman on New York Mortgage Foreclosures § 5.03; see generally Restatement [Second] of Contracts §§ 90, 139[1]; accord UCC § 1-103[b]). "Estoppel does not render the mortgage valid but prevents 'one who has represented it to be valid from asserting that it is void, to the injury of those who have acted in reliance upon the representation'" (Hammelburger v Foursome Inn Corp., 54 NY2d at 587, quoting Claflin v Boorum, 122 NY 385, 389; see Seidel v 18 E. 17th St. Owners, 79 NY2d 735, 743).
More generally, "one who has had the full benefit of a contract cannot be permitted, in an action founded upon it, to question its validity" (Buffalo v Balcom, 134 NY 532, 535; see Kane v Cortesy, 100 NY 132, 139). "The party upon whose rights or interests a fraud is [allegedly] committed should not be allowed, after the fact comes to his [or her] knowledge, to speculate upon the possible advantages to [themself] of confirming or repudiating the transaction" (Sheldon Hat Blocking Co. v Eichemeyer Hat Blocking Mach. Co., 90 NY 607, 616-617). "[W]ithout restoring what [was] received, [a party] cannot repudiate either the [note] or the mortgage" (Carpenter v Black Hawk Gold Min. Co., 65 NY 43, 50; see Sheldon Hat Blocking Co. v Eichemeyer Hat Blocking Mach. Co., 90 NY at 616-617).
As relevant here: "When a party with full knowledge, or with sufficient notice of his [or her] rights and of all the material facts, freely does what amounts to a recognition or adoption of a contract or transaction as existing, or acts in a manner inconsistent with its repudiation, and so as to affect or interfere with the relations and situation of the parties, [that party] acquiesces in and assents to it and is equitably estopped from impeaching it, although it was originally void or voidable" (Rothschild v Title Guar. & Trust Co., 204 NY 458, 464; see Townhouse Co. v Williams, 307 AD2d 223, 224). Equitable estoppel will be applied, "in accordance with established general principles, in order that the transactions and dealings may result justly and fairly with the parties concerned with them" (Rothschild v Title Guar. & Trust Co., 204 NY at 464). As relevant here, the doctrine of equitable estoppel "operates against an unjust repudiation of a sealed or a forged instrument" (id. [emphasis added]).
Here, the undisputed facts asserted in the pleadings (see generally Matter of Joshua AA. v Jessica BB., 132 AD3d 1107, 1107) and the documentary submissions of the defendants demonstrated "a defense to the asserted claims as a matter of law" (Leon v Martinez, 84 NY2d at 88; see Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d at 326). The defendants' uncontradicted submissions demonstrated that the plaintiff "had the full benefit" of the loan agreement (City of Buffalo v Balcom, 134 NY 532, 535). Notably, the plaintiff does not seek to rescind the loan agreement, but he nevertheless seeks to recoup "all closing costs paid to Defendants with any payments to [Citibank] since June 22, 2007," the date the loan agreement was executed (cf. Sheldon Hat Blocking Co. v Eichemeyer Hat Blocking Mach. Co., 90 NY at 616-617; Carpenter v Black Hawk Gold Min. Co., 65 NY at 49-50). Under the circumstances, the doctrine of equitable estoppel precludes the plaintiff from asserting that the recorded mortgage was void (see Rothschild v Title [*5]Guar. & Trust Co., 204 NY at 464; Carpenter v Black Hawk Gold Min. Co., 65 NY at 49-50; Zurlin v Hotel Levitt, 5 AD2d 945, 946; see also Jill Real Estate v Smyles, 150 AD2d 640, 642). Inasmuch as all four causes of action in the complaint were premised on the plaintiff's assertion that the recorded mortgage was void, the defendants were entitled, as a matter of law, to a judgment in their favor on each of the four causes of action asserted in the complaint (see CPLR 3211[a]).
In light of the foregoing, we need not reach the parties' remaining contentions. Since this is, in part, a declaratory judgment action, we remit the matter to the Supreme Court, Kings County, for the entry of a judgment, inter alia, declaring that the plaintiff is equitably estopped from denying the validity of the recorded mortgage (see Lanza v Wagner, 11 NY2d 317).
LASALLE, P.J., DILLON, MILLER and CONNOLLY, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court